1
2
3
4
5
6
7    IN THE UNITED STATES DISTRICT COURT
     FOR THE DISTRICT OF COLUMBIA
8
9
10
11   KEVIN GARNES-EL,

12          *Plaintiff,*                    No.  1:08-cv-02233 BJR

13          v.                              ORDER GRANTING DEFENDANTS'
                                            MOTION FOR SUMMARY JUDGMENT
14   DISTRICT OF COLUMBIA, *et al.*,

15          *Defendants.*

16
17
18          The Plaintiff, Kevin Garnes-El ("Plaintiff") brought this action pursuant to 42 U.S.C.

19   §1983 ("§1983"), and the Americans with Disabilities Act, 42 U.S.C. §12131 *et seq.* (the

20   "ADA"). This matter comes before the court on Defendant District of Columbia's Motion for

21   Summary Judgment ("Motion"). Plaintiff responded ("Opp."), and Defendant District of

22   Columbia replied ("Reply"). The court allowed Plaintiff to file a Surreply ("Surreply"). The

23   Motion is now ripe for resolution. For the reasons set forth below, the court grants Defendant's

24   Motion for Summary Judgment and dismisses this case in its entirety.

25

ORDER-1

I.   **FACTUAL AND PROCEDURAL BACKGROUND**[1]

Plaintiff Kevin Garnes-El is a male in his mid-fifties who suffers from several serious medical conditions, including multiple sclerosis. Since at least 2006, due to the worsening of his medical conditions and decreased functioning in his hands, Mr. Garnes-El has required the use of a motorized wheelchair. The facts giving rise to this action stem from the 2006 and 2008 arrests of Mr. Garnes-El by the Metropolitan Police Department of the District of Columbia ("MPD"), and the court appearances subsequent to each of those arrests. Plaintiff claims to have suffered violations of his rights under both the Fifth Amendment and the ADA.

### A. Facts underlying Plaintiff's Fifth Amendment claims

On July 19, 2006 ("2006 arrest"), and on August 31, 2008 ("2008 arrest"), Plaintiff was arrested by MPD officers. Plaintiff alleges that the MPD officers involved in these incidents knew or should have known that he suffered from serious medical conditions. Despite this, Plaintiff claims, in the course of each of these arrests, MPD officers threw him from his motorized wheelchair, and placed him face-down on the pavement in "careless disregard or indifference" to his medical conditions. Plaintiff also alleges that during these arrests, he was loaded into the back of police vehicles lacking features to accommodate his medical conditions, and was subsequently placed into holding cells without access to a wheelchair, motorized or otherwise. Mr. Garnes-El claims that as a result of these actions on the part of the MPD, he suffered unnecessary pain and injury. He asserts that the MPD's actions were taken with "careless disregard or indifference," and were "pursuant to a custom or policy of the District of Columbia."

---

[1] The facts recounted in this order are taken from the August 19, 2010 telephonic deposition of Mr. Garnes-El, and from the Second Amended Complaint ("SAC").

ORDER-2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

## B.  Facts underlying Plaintiff's ADA claims

The Plaintiff was taken to Superior Court to attend his arraignment for his 2006 arrest. According to Plaintiff, he was escorted through the front door of the courthouse in his motorized wheelchair, and then the Marshals Service[2] took him to the "bullpen," a prisoner holding cell. However, Plaintiff states, he was not able to enter the bullpen because his motorized wheelchair could not fit through the door. Instead, the Marshals placed him in what Plaintiff characterizes as a small room near the Marshal's control room. Plaintiff asserts that this room lacked either a toilet or running water, and that consequently, he was reduced to urinating in a cup as he waited for his court appearance. Eventually, Plaintiff alleges, a magistrate came to the room where he was being held, and arraigned him there, in the presence of his attorney.

Following his 2008 arrest, Plaintiff states that he was transported to Superior Court on several occasions, but was never taken into a courtroom because the hallways leading from the holding area to the courtrooms were too small to accommodate his motorized wheelchair. On only one occasion, according to the Plaintiff, was he allowed to attend a hearing in a courtroom. Plaintiff claims that on this occasion, he was placed, to his great detriment, into a folding manual wheelchair. Plaintiff states that he experienced severe pain, which caused him to faint and require medical attention, and prevented him from participating in the hearing.

## C.  Procedural History

Plaintiff filed this action *pro se* on December 29, 2008, against the Government of District of Columbia, the Metropolitan Police Department, the District of Columbia Housing Authority Police Department, and the Superior Court of the District of Columbia. Plaintiff brought claims pursuant to 42 U.S.C. §1983 and the ADA, 42 U.S.C. §12132. The case was

---

[2] The entity responsible for the supervision of prisoners inside the Superior Court of the District of Columbia is the United States Marshals Service for the Superior Court of the District of Columbia.

ORDER-3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

originally assigned to Judge Henry H. Kennedy, who granted Plaintiff's motion to proceed *in forma pauperis*. However, the case was reassigned to Judge James Robertson. Defendant District of Columbia Housing Authority filed a motion to dismiss or in the alternative, for summary judgment on March 30, 2009. On April 20, 2009, Plaintiff moved for summary judgment, and on May 5, 2009, defendants other than the District of Columbia Housing Authority filed an opposition and motion to dismiss. On May 8, 2009, Judge Robertson issued an order granting in part and denying in part defendants' motion, and denying Plaintiff's motion for summary judgment in its entirety. Judge Robertson dismissed the Metropolitan Police Department and the Superior Court as defendants on the basis that each is an entity that cannot be sued in its own name. However, Judge Robertson refused to grant the District of Columbia's motion to dismiss based on ineffective service. The District of Columbia filed another motion to dismiss, attacking the form of Plaintiff's complaint pursuant to Fed. R. Civ. P. 8(a) and 10(b). Judge Robertson denied the motion, finding that the complaint met the relevant pleading requirements. On June 26, 2009, Judge Robertson ordered the clerk to appoint counsel for the Plaintiff, and on July 16, 2009, attorney James Philip Ellison entered an appearance. Plaintiff filed an amended complaint on September 15, 2009.

On June 3, 2010, the case was reassigned to Judge Ellen S. Huvelle. Plaintiff filed a Second Amended Complaint on October 29, 2010, which is the operative complaint in this case. Plaintiff's Second Amended Complaint contains claims against the District of Columbia and its mayor, Adrian Fenty,[3] in his official capacity, pursuant to §1983, for violation of his Fifth Amendment rights, and for discrimination under the ADA. The case was reassigned to Judge

---

[3] The current mayor of the District of Columbia is Vincent C. Gray, who shall be substituted for former Mayor Adrian Fenty as a defendant in this action. Although the District and Mayor Gray are both defendants, for purposes of this order, with few exceptions, the court will refer to the District of Columbia, and Mayor Gray as one entity: the "District."

ORDER-4

1   Beryl A. Howell on January 19, 2011. On June 27, 2011, Defendant District of Columbia filed a

2   Motion for Summary Judgment. The case was reassigned to Judge Barbara Jacobs Rothstein on

3   October 21, 2011.

4   **II.   ANALYSIS**

5   **A.  SUMMARY JUDGMENT**

6   The court will grant a motion for summary judgment if the pleadings and any affidavits

7   or declarations show that there is no genuine issue as to any material fact and that the movant is

8   entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the

9   burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*,

10  477 U.S. 317, 322 (1986). Factual assertions in the moving party's affidavits or declarations may

11  be accepted as true unless the opposing party submits its own affidavits or declarations or

12  documentary evidence to the contrary. *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992).

13  **B.  SECTION 1983 CLAIMS**

14  Section 1983 is an enabling act that "authorizes equitable relief and compensatory

15  damages against any 'person' who, under color of law, deprives another of a constitutional

16  right." The District of Columbia may be considered a "person" that may be held liable under

17  §1983. *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 690 (1978).

18  However, such a claim may be maintained against the District "only if its agents acted pursuant

19  to municipal policy or custom." *Ekwem v. Fenty*, 666 F. Supp. 2d 71, 76 fn.2 (D.D.C. 2009)

20  (internal citation and quotation marks omitted). Thus, to bring a successful §1983 claim against

21  the District of Columbia, the plaintiff must show not just a constitutional violation, but that the

22  violation occurred pursuant to a custom or policy of the District. *Ekwem*, 666 F. Supp. 2d at 76.

1
2
3

Further, under §1983, a plaintiff may sue the Mayor in his individual capacity only where the Mayor was directly responsible for the alleged constitutional deprivation, or where he or she authorized or approved such conduct. *Ekwem*, 666 F. Supp. 2d at 76.

4
5
6
7
8
9
10
11
12

Mr. Garnes-El asserts that his treatment at the hands of the MPD amounted to a deprivation of his constitutional rights and these violations occurred pursuant to a custom or policy of deliberate indifference on the part of the District. But this court need not decide the former issue. Whether or not the rough treatment the Plaintiff may have endured during his 2006 and 2008 arrests occurred and amounted to violations of his constitutional rights, Plaintiff has failed to present evidence sufficient for the court to find that the actions of the MPD officers were taken pursuant to a custom or policy of the District of Columbia. This failure is fatal to Plaintiff's §1983 claims.

13
14
15
16
17
18
19

In order to prove the existence of a custom or policy that would render the District liable under §1983, Plaintiff must show that the "municipality or one of its policymakers explicitly adopted the policy that was the 'moving force of the constitutional violation." *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004). Moreover, a pattern of similar constitutional violations is usually required to prove a *de facto* custom or policy of deliberate indifference on the part of a municipality. *Board of Comm'rs of Bryan City v. Brown,* 520 U.S. 397, 409 (1997).

20
21
22
23
24
25

Plaintiff in the instant case has offered no such proof. His §1983 claims rest upon his unsupported contentions that the MPD acted pursuant to a custom or policy of:  (1) removing arrestees from wheelchairs unnecessarily and with undue force; (2) transporting disabled persons in inadequately equipped vehicles; and (3) housing disabled arrestees in holding cells lacking facilities to meet their medical needs. The only proof Plaintiff offers beyond the testimony about his own experiences in the course of his arrests in 2006 and 2008, is a copy of a letter that was

ORDER-6

1

2

3

sent to the Mayor of the District of Columbia on behalf of another person confined to a wheelchair who asserted mistreatment by the MPD.  Defendant argues and the court agrees, that the record in this case falls far short of what would be required to survive summary judgment.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

In fact, the D.C. Circuit has found plaintiffs presenting substantially more proof than Mr. Garnes-El to be lacking evidence sufficient to establish the existence of a such a policy. In *Carter v. District of Columbia*, 795 F.2d 116 (D.C. Cir. 1986), for example, the plaintiffs also alleged violations of their constitutional rights occurring during arrests by MPD officers. They claimed that these violations stemmed from a municipal policy of deliberate indifference. *Carter,* 795 F.2d at 121. At trial, in support of their contentions, the Plaintiffs presented evidence of several other complaints of excessive force, press clippings related to various incidents of MPD misconduct, and testimony about other incidents of excessive force. *Id.* at 123. The District court, however, directed verdicts for the defendants after finding that the plaintiffs had not shown "that a municipal policy or established custom of deliberate indifference to police misconduct caused plaintiffs to be subjected to a deprivation of constitutional dimension." *Id.* The Circuit court affirmed this finding, holding that the evidence consisted only of "scattered" events that did not "coalesce into a discernible 'policy.'" *Id.*  In the instant case, the Plaintiff has done far less than the plaintiffs in *Carter*.  Here, the Plaintiff has utterly failed to provide the court with evidence from which it could find proof of a policy or custom that would justify the attachment of municipal liability to the District of Columbia. Similarly, Plaintiff has presented no evidence whatsoever that the Mayor was directly responsible for the alleged constitutional deprivation, or that he authorized or approved such conduct. The court, therefore, grants the Defendants' Motion for Summary Judgment with respect to the §1983 claims.

ORDER-7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

## C.  ADA CLAIMS REGARDING DENIAL OF ACCESS

Pursuant to Title II of the ADA, "a qualified individual with a disability" may not, because of his or her disability, "be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132. The obligations of public entities in this regard are outlined in regulations promulgated under Title II. A qualified individual with a disability cannot be excluded from or denied benefits of a public entity's services, programs or activities because of issues of inaccessibility or unusability. 28 C.F.R. §35.149. Thus, public entities, absent certain circumstances, are charged with making "reasonable modifications" where necessary, to "avoid discrimination on the basis of disability[.]" 28 C.F.R. §35.130(b)(7).

It is not clear, however, that Plaintiff was denied access to a courtroom because of his disability. Defendants have provided the court with testimony casting doubt on some of Plaintiff's assertions. Supervisory Detention Enforcement Officer Eric Leon Clark of the United States Marshals Service stated in his May 31, 2011 deposition that the Marshals Service has the ability to produce a prisoner in any sized wheelchair to any courtroom in the Superior Court. Officer Clark also stated that if a disabled prisoner was not provided access, it could have been as a result of "disruptive, noncompliant or combative behavior," or due to a perceived threat to security. Therefore, Defendants claim, if Plaintiff was not brought to a particular courtroom on a particular day, it was not due to his disability, but due to a decision made by the U.S. Marshals Service.

Even if the Plaintiff could show that he was deprived access solely because he was confined to a motorized wheelchair, and that such deprivation was a violation of his rights under the ADA, he still could not prevail. As the Defendant points out, violations of the ADA by

ORDER-8

employees of the U.S. Marshals Service are not imputable to the District of Columbia. In *Johnson v. District of Columbia*, 584 F.Supp.2d 83 (D.D.C. 2008), the plaintiffs filed an action against the District of Columbia for constitutional violations stemming from the conduct of the Superior Court Marshal. The District Court determined that the District of Columbia could not be held liable for the actions of a federal official, who was not "an employee, servant, agent or actor under the control of the District of Columbia[.]" *Johnson*, 584 F.Supp.2d at 85. The court explained that the office of Superior Court Marshal was created as part of the federal Anti-Drug Abuse Act, 28 U.S.C. §§561-66, and that pursuant to that Act, the District of Columbia has no control over, or choice but to hand its arrestees to the Superior Court Marshal. *Johnson,* 584 F.Supp.2d at 93. The instant case is indistinguishable from *Johnson*. The Plaintiff claims that employees of the U.S. Marshal Service for the Superior Court of the District of Columbia deprived him of rights guaranteed to him by the ADA. However, it is well-established that the District of Columbia can bear no liability for the decisions of the U.S. Marshals responsible for prisoner supervision. Plaintiff's argument that this court should decline to apply the rule articulated in *Johnson* because it has been modified by two subsequent opinions is unpersuasive. Neither *Bame v. Dillard*, 647 F.Supp.2d 43 (D.D.C. 2009) nor Brown *v. Short,* 729 F.Supp.2d 125 (D.D.C. 2010) supports a finding of liability on the part of the District, as each of these cases addresses only the potential liability of representatives of the U.S. Marshals Service. For all the above reasons, Plaintiff's claims against Mayor Gray also fail. The court grants Defendants' Motion for Summary Judgment with respect to the Plaintiff's ADA claims.

### D.  PLAINTIFF'S ADDITIONAL ARGUMENTS

Plaintiff argues in his Opposition and Surreply that in addition to his ADA claims for denial of access, he has in fact pled ADA claims in connection with the treatment he received at

ORDER-9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

the time of his 2006 and 2008 arrests by the MPD. Defendants dispute this assertion, noting that in the Second Amended Complaint, Plaintiff clearly links his §1983 claims with his arrests, and his ADA claims with his court appearances, and that he does not plead ADA claims in connection with his arrests. The court agrees with Defendants' characterization of the Second Amended Complaint. The Plaintiff's claims in the operative complaint are well-separated: the §1983 claims are against the MPD and arise of out his 2006 and 2008 arrests, while the ADA claims relate specifically to the court appearances subsequent to each of those events.

In the alternative, Plaintiff seeks leave to amend his complaint to add: (1) properly-pled ADA claims against the MPD; and (2) a Rehabilitation Act claim against the U.S. Marshals Service. Once a responsive pleading has been served, and in this case, we are well past that point, a plaintiff may amend a complaint only by leave of the court or by written consent of the adverse party. Fed. R. Civ. P. 15(a)(2). The grant or denial of leave lies in the sound discretion of the district court. *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). However, Rule 15 mandates that leave is to be freely given "when justice so requires." A motion to amend a complaint to add a party also implicates Federal Rules of Civil Procedure 20 and 21, which govern joinder. However, the decision of whether to allow a complaint to be amended to add a party likewise lies within the discretion of the court. *Wiggins v. Dist. Cablevision, Inc.*, 853 F.Supp. 484, 499 n. 29 (D.D.C.1994) (stating that "[i]t is well established that after a responsive pleading has been served, the standards for adding parties are the same whether the motion is made under Rule 15 or Rule 21"). Plaintiff argues that there is no prejudice to the District if the court allows him to amend to add the ADA claims against the MPD, because he put the District on notice that he was pursuing this theory by requesting discovery related to such a claim.

ORDER-10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

The court cannot agree. While courts should freely give leave when justice so requires, "justice does, after all, have to require it[.]" *Mayle v. Felix,* 545 U.S. 644, 665-66 (2005) (J. Souter and J. Stevens, dissenting). "[B]oth undue delay and prejudice justify the denial of leave to amend." *Unique Industries, Inc. v. 965207 Alberta Ltd.*, 764 F.Supp.2d 191, 208 (D.D.C. 2011) (*citing* 6 Fed. Prac. & Proc. § 1488 (noting that "courts have not allowed amendments to be made that seek to add new claims or theories, parties, or new defenses or counterclaims to the action when allowing the amendment is deemed to be unduly burdensome, given the stage to which the litigation has advanced"). In the instant case, in which the Plaintiff has been represented since July 16, 2009, and has already amended his complaint twice, the court can find no excuse for Plaintiff's failure to seek to amend his complaint in a more timely fashion. To allow an amendment at this late date would be unfair to the party Plaintiff seeks to join, and unfair and prejudicial to the District. The court therefore denies Plaintiff's requests for leave to amend.

III.   CONCLUSION

For all the foregoing reasons, the court hereby grants Defendants' Motion for Summary Judgment, and DISMISSES this case in its entirety, with prejudice as to Defendant District of Columbia and Mayor Gray.

DATED this 25th day of January, 2012.

Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER-11